IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SUSQUEHANNA BANK, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. RDB-13-3783 |
| | * | |
| KAREN WELDIN STEWART, | | |
| INSURANCE COMMISSIONER OF | * | |
| THE STATE OF DELAWARE, | | |
| *in her capacity as the Insurance Commissioner* | * | |
| *and in her capacity as the Receiver for Indemnity* | | |
| *Insurance Corporation, RRG* | * | |
| | | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

This case is a declaratory judgment action in which Plaintiff Susquehanna Bank seeks to establish its rights to certain funds in an account at the bank. The account is held by an insurance company currently in receivership in the State of Delaware. Defendant Karen Weldin Stewart, the Insurance Commissioner of the State of Delaware, ("the Commissioner") filed a Motion to Dismiss (ECF No. 10), and that motion is now fully briefed. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant Karen Weldin Stewart's Motion to Dismiss (ECF No. 10) is GRANTED.

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

This case involves funds held in a bank account (the "Account") at Plaintiff Susquehanna Bank that belongs to Indemnity Insurance Corporation, RRG ("IICRRG"), a risk retention group that is organized under the laws of Delaware but which has its principal place of business in Sparks, Maryland.[1]   IICRRG is now in receivership in Delaware. Susquehanna Bank asserts that it is nevertheless entitled to the funds in the Account—roughly five million dollars—because the account was pledged as collateral for a loan that is now in default.

Specifically, Susquehanna Bank alleges that it made a commercial loan in the principal amount of five million dollars to RB Entertainment Ventures, LLC, which is a Delaware limited liability company that is affiliated with IICRRG and which has its principal place of business in Sparks, Maryland.  The proceeds of the loan were placed in the Account. IICRRG executed a Guaranty Agreement and pledged to repay the Loan; in connection to that pledge, IICRRG entered an Account Pledge and Security Agreement and Control Agreement, in which IICRRG granted Susquehanna Bank a first priority security interest to the funds in the Account.  The loan documents indicate that Maryland law is to govern the agreements.  Susquehanna Bank filed a UCC-1 financing statement[2] and perfected its interest.[3]

---

[1] Under the Liability Risk Retention Act of 1986, 15 U.S.C. § 3901 et *seq.*, a risk retention group that has been licensed in one state may do business in another state by submitting certain documents to the insurance commissioner of that state.  *See* 15 U.S.C. § 3902(d)(2).

[2] The Uniform Commercial Code ("UCC") is a uniform act governing the law of sales in all fifty states.  A UCC-1 financing statement is a form filed by a creditor to give notice of the creditor's interest in personal property of a debtor and, thereby, perfect the creditor's security interest in the property.

[3] The Commissioner contends that the loan had no legitimate business purpose other than to make IICRRG appear solvent.  The Commissioner contends that the agreements "prevented any use of the funds on deposit, gave exclusive control over the funds to the Bank, pledged the funds to the Bank for the RBEV loan,

Defendant Karen Weldin Stewart (the "Commissioner") is the Insurance Commissioner of the State of Delaware and, therefore is vested with authority to enforce the Delaware Insurance Code.  Additionally, the Commissioner is designated as the statutory receiver for insurers subject to Delaware delinquency proceedings.  *See* 18 Del. Code ch. 59.

The Commissioner instituted a proceeding in the Delaware Court of Chancery on May 30, 2013, seeking an *ex parte* order authorizing the Commissioner to take temporary control of the assets and operations of IICRRG.  In essence, the Commissioner sought to determine the financial health of IICRRG.  The Delaware Court of Chancery issued a seizure order ("the Delaware Seizure Order"), which required all persons and entities in possession of assets of IICRRG to provide an accounting of those assets and surrender them to the Commissioner.

In light of the fact that IICRRG's assets were primarily located in Maryland, the Commissioner next filed an action in the Circuit Court for Baltimore County, Maryland in order to enforce the Delaware Seizure Order in Maryland.[4]  The Maryland Court issued an *ex parte* order on June 17, 2013 ("the Maryland Seizure Order").  Under the authority of this Order, the Commissioner obtained a Writ of Garnishment of Property directed to Susquehanna Bank.

By letter, Susquehanna Bank identified the Account as one of the accounts held by IICRRG at the bank, but it denied that the funds in that account were properly classified as assets of IICRRG.  Susquehanna Bank refused to turn over the funds held in the Account,

---

and allowed the Bank to summarily seize the funds to set off the RBEV loan balance in the event of a default in the RBEV loan."  Def.'s Mem. Supp. Mot. Dismiss 9.

[4] The case name for that action was *State of Delaware, ex rel., the Honorable Karen Weldin Stewart, CIR-ML, Insurance Commissioner of the State of Delaware v. Indemnity Insurance Corporation, RRG.*, Case No. 03-C-006820 OC.

but it did surrender IICRRG's other assets.  The Bank also filed a formal Answer to the Writ of Garnishment.[5]

After reviewing the various materials uncovered during the investigation, the Commissioner determined that IICRRG was insolvent.  Accordingly, the Commissioner filed a Liquidation Petition on July 26, 2013.  Thereafter, the Commissioner filed a petition for entry of rehabilitation and injunction order.  On November 7, 2013, the Delaware Court of Chancery entered a rehabilitation order ("the Delaware Rehabilitation Order").  The Delaware Rehabilitation Order appointed the Commissioner as the receiver for IICRRG and again ordered an accounting and surrender of IICRRG's assets.  The Rehabilitation Order also authorized the Commissioner to determine and adjudicate claims asserted by creditors to IICRRG under the Delaware Insurance Code.[6]

Meanwhile, Susquehanna Bank moved forward in the Maryland litigation in an attempt to determine its rights.  Specifically, it filed a motion for judgment on the writ of garnishment under Maryland Rule 2-645(g), and it also filed a motion for relief from the Maryland Seizure Order.  In response, the Commissioner argued that the Delaware Rehabilitation Order had superseded the Maryland Seizure Order and that the Maryland litigation was now superfluous.  Additionally, the Commissioner filed motions to vacate the Maryland Seizure Order and to dissolve the writs of garnishment.  Susquehanna Bank opposed the Commissioner's motion to dissolve the writ.

Susquehanna Bank filed the presently pending action in this Court on December 16, 2013.  The Complaint is an action for declaratory judgment, and the Bank seeks a declaration

---

[5] The Commissioner contends that this Answer was untimely filed.
[6] Under 18 Del. Code. § 5918, there is a specific process for asserting and determining the priority of claims.

that it has "the sole and exclusive right to the funds on deposit in the [Account]" and that it may "exercise its right of set-off with respect to the funds . . . and to apply such funds to reduce the balance of the Loan [to RBEV]". The Commissioner has moved to dismiss the action under Rule 12(b)(1), and that motion was fully briefed.

By direction of the Court, the parties also submitted letters that provided updates on recent developments in the other state proceedings involving the entities and parties involved in this case. In the Delaware action, the Commissioner shifted course and converted the receivership action for a rehabilitation into a liquidation. The Delaware Court of Chancery entered a Liquidation and Injunction Order on April 10, 2014. That order was enrolled in the Maryland action on July 10, 2014.

Meanwhile, in the Maryland litigation, the state court granted the Commissioner's motions to vacate the Maryland Seizure Order and to dissolve the writs of garnishment on June 16, 2014. Additionally, the Maryland court denied Susquehanna Bank's motions for relief from the Maryland Seizure Order and for judgment on the Writ of Garnishment. In essence, those rulings terminated the bank's involvement in the case, but the bank subsequently filed a formal motion to intervene in that action on July 1, 2014. That motion is fully briefed and is awaiting ruling from the Maryland court.

<u>STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the

allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).  With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.

Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted).  The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dep't of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000). A plaintiff carries the burden of establishing subject matter jurisdiction.  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

<u>ANALYSIS</u>

In her Motion to Dismiss, the Commissioner argues that the Eleventh Amendment bars this Court from exercising subject matter jurisdiction.  Alternatively, the Commissioner urges this Court to decline to exercise jurisdiction, asserting that abstention is proper in this case due to the other pending state court proceedings.

## I.      Eleventh Amendment Sovereign Immunity

The Eleventh Amendment of the United States Constitution acts as a bar to certain actions against a State and the State's officials.  Specifically, the Eleventh Amendment states that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. CONST. Amend. XI. States may nevertheless consent to suit in federal court, and Congress may also abrogate the states' sovereign immunity pursuant to its power under the Fourteenth Amendment.  *See Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637-38 (2011).

As noted above, Defendant Karen Weldin Stewart is the Insurance Commissioner of the State of Delaware.  Under Delaware law, the Commissioner presides over liquidation and rehabilitation proceedings of the State's insurers.  *See* 18 Del. Code § 5902(d).  Additionally, the Commissioner is the statutorily appointed receiver for insurers subject to delinquency proceedings.  *See id.* § 5913(a).  As receiver, the Commissioner is required to "take possession of the assets of the insurer and to administer the same under the orders of [the Court of Chancery]."[7]  *Id.*

---

[7] Additionally, subsection § 5913(b) provides:

> As a domiciliary receiver, the Commissioner shall be vested by operation of law with the title to all of the property, contracts and rights of action and all of the books and records of the insurer, wherever located, as of the date of entry of the order directing the Commissioner to rehabilitate or liquidate a domestic insurer or to liquidate the United States branch of an alien insurer domiciled in this State, and the Commissioner shall have the right to recover the same and reduce the same to possession, except that ancillary receivers in reciprocal states shall have, as to assets located in their respective states, the rights and powers which

Nevertheless, Susquehanna Bank contends that a suit against the Commissioner in her capacity as a receiver for an insurance company is not a suit against her in her official capacity as an officer of the State; in the Bank's view, the Commissioner has claimed an interest in the Account on behalf of IICRRG and not the State of Delaware.  *See* Pl.'s Opp'n 12.  This argument essentially requests that this Court ignore the statutory framework for insurance companies of the State of Delaware.  However, the United States Court of Appeals for the Fourth Circuit has clearly recognized that receivership proceedings are in fact state administration proceedings.  *See First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 351 (4th Cir. 2002) (noting that a receivership action "is in fact a proceeding instituted by a state agency to enforce state securities and insurance laws pertaining to the issuance, assignment and sale of life insurance policies" even where the receiver is merely appointed by a state official rather than holding a state executive office).

Susquehanna Bank points to *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982) as purportedly establishing a rule exempting cases seeking possession of property from the normal Eleventh Amendment bar on suits against state officials.[8]  *See* Pl.'s Opp'n 12.  The *Treasure Salvors* case involved a dispute over artifacts that treasure hunters had

---

are herein prescribed for ancillary receivers appointed in this State as to assets located in this State.
18 Del. Code § 5913(b).

[8] Susquehanna Bank also relies upon *Tindal v. Wesley*, 167 U.S. 204 (1897). This case is of little relevance, however, because the Court's precise holding has been overruled. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 109 n.19 (1984) ("In [*Tindal*] . . . , the allegation was that the defendants had committed common law torts, not, as here, that they had failed to carry out affirmative duties assigned to them by statute. Tort cases such as [this] were explicitly overruled in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)." (citations omitted)); *see also John G. and Marie Stella Kenedy Memorial Foundation v. Mauro*, 21 F.3d 667, 672-73 (5th Cir. 1994) (noting that the plaintiff's reliance on *Tindal* was misplaced because the case had been "explicitly overruled.").

discovered on the ocean floor of the Florida Keys in a shipwreck.  When the shipwreck was discovered, the State of Florida claimed ownership pursuant to a state statue and the State entered into a contract with the treasure hunters that provided compensation to the treasure hunters for salvaging the shipwreck.  Due to this agreement, Officials of the Florida Division of Archives held a number of artifacts recovered from the shipwreck.  However, in an unrelated proceeding, it was determined that Florida's territorial waters did not include the location where the shipwreck was found.  Thereafter, the treasure hunters initiated a suit against the State Archives officials in order to obtain a declaration recognizing their ownership interest in the recovered artifacts.  Eventually, the treasure hunters filed a motion for an order to the United States Marshal to arrest and take custody of the artifacts in the archives officials' possession so that the court could take *in rem* jurisdiction over those items.[9]  In response, the State submitted a number of arguments, including a claim that the Eleventh Amendment to the United States Constitution barred the exercise of the district court's jurisdiction.

On appeal, the United States Supreme Court explained the framework in which a suit against state officials might proceed; specifically, the Court noted that "[t]he Eleventh Amendment does not bar an action against a state official that is based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional."  *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689 (1982).  The Supreme Court examined the following three questions to determine whether the Eleventh Amendment posed a bar to the treasure hunters' attempt to arrest the artificats:

---

[9] The Archives was located in Tallahassee, which is in the Northern District of Florida.  Therefore, the Archives was outside the territorial jurisdiction of the Southern District of Florida.

(1) whether the action was asserted against officials of the State or against the State itself; (2) whether the challenged conduct of state officials constituted an *ultra vires* or unconstitutional withholding of property or merely a tortious interference with property rights; and (3) whether the relief sought was proper prospective relief or a retroactive award requiring payment of funds from the state treasury. *Id.* at 690.   In analyzing this second question, the Supreme Court noted:

> As recognized in *Larson* [*v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)], "action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property)" that is beyond the officer's statutory authority is not action of the sovereign, 337 U.S. at 701; a suit for specific relief against the officer is not barred by the Eleventh Amendment. This conclusion follows inevitably from *Ex parte Young.* If conduct of a state officer taken pursuant to an unconstitutional state statute is deemed to be unauthorized and may be challenged in federal court, conduct undertaken without any authority whatever is also not entitled to Eleventh Amendment immunity.

*Id.* at 696-97.   The Court concluded that the contracts between the State and the treasure hunters did not justify the State's refusal to surrender the property, and it further noted that there was no state law or statute that "even arguably would authorize" the State's actions.   *Id.* 695-96.   Because the state officials did not have "a 'colorable claim' to possession of the artifacts," the Court found that the Eleventh Amendment was not a defense to the execution of the warrant of arrest.

As this Court's summary of *Treasure Salvors* should make clear, that case is not analogous to the matter before this Court.   In this case, the Commissioner has claimed that she is authorized by state statute to take possession of IICRRG's assets as the statutorily-appointed receiver.   While the precise remedy requested by Susquehanna Bank (a declaratory

judgment that does not require any payment from the state treasury) falls within the permissible class of relief identified by *Treasure Salvors*, the nature of the case as a whole does not. Susquehanna Bank has not attacked the statutory framework of the Commissioner's authority, but instead has simply asserted that a substantive right to the funds in the Account. There is no allegation that the Commissioner has exceeded her statutory authority; instead, Susquehanna Bank merely asserts that the Commissioner has no right in the property due to a separate, private agreement between the Bank and a third-party. Because the Commissioner is acting within her statutory authority, her actions are actions of the sovereign for which this Court must afford her sovereign immunity under the Eleventh Amendment. Accordingly, this Court must dismiss this action.

## II.   *Burford* Abstention

Alternatively, even if the Eleventh Amendment was not a bar to Susquehanna Bank's action, this Court would abstain from exercising its jurisdiction under the *Burford* abstention doctrine. Under *Buford v. Sun Oil Co.*, 319 U.S. 315 (1943), a federal district court may abstain from exercising its jurisdiction "when federal adjudication would unduly intrude upon complex state administrative processes because . . . federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007). There is no "formulaic test for determining when dismissal under *Burford* is appropriate." *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002). However, after weighing "the federal interests in retaining jurisdiction over the dispute and the competing concern for the independence of state action," a district court may abstain where "the State's interests are paramount and . . .

a dispute would best be adjudicated in a state forum." *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal quotation marks omitted)).

In this case, Plaintiff Susquehanna Bank urges this Court to declare its rights to funds claimed by the Delaware Insurance Commissioner as assets of a company in receivership. The Fourth Circuit has recognized receivership actions as state agency proceedings, *First Penn-Pacific*, 304 F.3d 351, and has further acknowledged that *Burford* abstention is appropriate in such cases. *Id.* at 350 ("[F]ederal courts have frequently abstained to avoid interfering with state receivership proceedings. . . [and] to allow for the consistent dissolution of the receivership estate."). Another factor weighing in favor of state court adjudication is the fact that the case involves the insurance industry, which is a "largely local and highly regulated . . . industry." *Id.* at 351. Indeed, the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, provides that state regulation of the insurance business "is in the public interest." 15 U.S.C. § 1011.

In light of the circumstances of this case, the various state courts involved in the receivership proceedings should have the first opportunity to address the issues raised by Susquehanna Bank. Indeed, were the state courts not afforded such an opportunity, resolution of this case in Plaintiff's favor would likely interfere with the orders already issued by those state courts. For example, the Maryland Court has already denied Susquehanna Bank's request for judgment on the writ of garnishment based upon Maryland Rule 2-645— an argument advanced in this Court as well. *See John Crane, Inc. v. Puller*, 169 Md. App. 1, 26 (2006) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive

in a subsequent action between the parties, whether on the same or a different claim.") (citing *Murray Intl. v. Graham*, 315 Md. 543, 547 (1989)); *see also U.S. v. $106,647.00 in U.S. Currency*, No. RDB-13-2433, 2014 WL 4230917, at * 2 (D. Md. Aug. 24, 2014) ("According to the mandate of 28 U.S.C. 1738, federal courts are required to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.") (quoting *Grochowski v. Dewitt–Rickards*, 928 F.2d 399 (Table), 1991 WL 32278, at *1 (4th Cir. Mar. 13, 1991) (per curiam)).  While Susquehanna Bank complains that it has been barred from asserting its claimed rights in the state court proceedings, that argument is purely speculative at this point because its motion to intervene is still pending.  Accordingly, this Court finds that abstention would be proper in this case even if this action was not barred by the Eleventh Amendment.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Karen Weldin Stewart's Motion to Dismiss (ECF No. 10) is GRANTED and this case is DISMISSED.

A separate Order follows.

Dated:          September 29, 2014                    _____/s/_____
                                                     Richard D. Bennett
                                                     United States District Judge